# IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF ARKANSAS
## FORT SMITH DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>   PLAINTIFF<br><br>v.<br><br>$813,490.00 UNITED STATES CURRENCY,<br>   DEFENDANT | )<br>)<br>)<br>) Civil No. 2:24-CV-02099<br>)<br>)<br>) |

## COMPLAINT FOR FORFEITURE IN REM

Plaintiff, United States of America, by its attorneys, David Clay Fowlkes, United States Attorney for the Western District of Arkansas, and the undersigned Assistant United States Attorney, brings this complaint and alleges as follows in accordance with Supplemental Rule G(2) of the Federal Rules of Civil Procedure:

### NATURE OF THE ACTION

1. This is an action to forfeit property to the United States as property that is proceeds of or involved in violations of 21 U.S.C. §§ 841 et seq. and as such is forfeitable pursuant to 21 U.S.C. § 881(a)(6).

### THE DEFENDANT IN REM

2. The defendant property consists of $813,490.00 in United States Currency that was seized from Shawkat Hamdi on March 8, 2024, at the following location: mile marker #2 on Interstate 40 in Crawford County, Arkansas, which is in the Western District of Arkansas, Fort Smith Division. It is presently in the custody of the United States Marshals Service.

## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction over an action commenced by the United States under 28 U.S.C. § 1345, and over an action for forfeiture under 28 U.S.C. § 1355(a). This Court also has jurisdiction over this particular action under 21 U.S.C. § 881(a)(6).

4. This Court has *in rem* jurisdiction over the defendant property:

   a. pursuant to 28 U.S.C. § 1355(b)(1)(A) because acts or omissions giving rise to the forfeiture occurred in this district; and/or

   b. pursuant to 28 U.S.C. § 1355(b)(1)(B), incorporating 28 U.S.C. § 1395, because the action accrued in this district.

5. Venue is proper in this district:

   a. pursuant to 28 U.S.C. §1355(b)(1)(A) because acts or omissions giving rise to the forfeiture occurred in this district; and/or

   b. pursuant to 28 U.S.C. § 1395, because the action accrued in this district.

## BASIS FOR FORFEITURE

6. The defendant property is subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6) because it constitutes 1) money, negotiable instruments, securities and other things of value furnished and intended to be furnished in exchange for a controlled substance in violation of the Controlled Substances Act; 2) proceeds traceable to such an exchange; or 3) money, negotiable instruments, and securities used and intended to be used to facilitate a violation of the Controlled Substances Act.

## FACTS

7. Please see the Affidavit of Drug Enforcement Administration Special Agent Michael Brooks attached hereto as Exhibit A. The attached affidavit is hereby incorporated herein

as if word-for-word and made a part of this Complaint. As such, the Affidavit and all fifty-four additional paragraphs are reincorporated here as if alleged herein and require a responsive pleading to each separate averment contained therein.

## CLAIM FOR RELIEF

WHEREFORE the United States prays that the defendant property be forfeited to the United States, that the plaintiff be awarded its costs and disbursements in this action, and for such other and further relief as the Court deems proper and just.

Respectfully submitted,

DAVID CLAY FOWLKES
UNITED STATES ATTORNEY

By: *(signature)*

BENJAMIN WULFF
Assistant United States Attorney
Arkansas Bar No. 2005190
414 Parker Avenue
Fort Smith, AR 72901
Telephone: (479) 249-9044
E-mail: Ben.Wulff@usdoj.gov

## VERIFICATION

I, Special Agent Michael Brooks, hereby verify and declare under penalty of perjury that I am a Special Agent with the United States Drug Enforcement Administration, that I have read the foregoing Verified Complaint in Rem and know the contents thereof, and that the matters contained in the Verified Complaint are true to my own knowledge, except that those matters herein stated to be alleged on information and belief and as to those matters I believe them to be true.

The sources of my knowledge and information and the grounds of my belief are the official files and records of the United States, information supplied to me by other law enforcement officers, as well as my investigation of this case, together with others, as a Special Agent of the Drug Enforcement Administration.

I hereby verify and declare under penalty of perjury that the foregoing is true and correct.

Dated:

_____
Michael Brooks
Special Agent
Drug Enforcement Administration

# EXHIBIT A

## AFFIDAVIT IN SUPPORT OF COMPLAINT FOR FORFEITURE IN REM

I, DEA Special Agent Michael Brooks, being first duly sworn, hereby depose and state as follows:

1. Your affiant is a Special Agent with the United States Department of Justice, Drug Enforcement Administration ("DEA") and has been employed with the DEA since June 2019. Your affiant is a criminal investigator for the United States within the meaning of Title 21, United States Code, Section 878, and therefore your affiant is empowered to conduct investigations of, and make arrests for, the offenses enumerated in Title 21. Accordingly, your affiant is a "federal law enforcement officer" within the meaning of Federal Rule of Criminal Procedure 41(a)(2)(C), that is, a government agent engaged in enforcing the criminal laws and duly authorized by the Attorney General to request a seizure warrant.

2. Your affiant began his career as a Special Agent with the DEA in October of 2019. Your affiant received sixteen weeks of training at the DEA Academy in Quantico, Virginia, where your affiant learned to identify various types of controlled substances by sight and odor; the way in which controlled substances are packaged, marketed, and consumed; drug testing; informant handling; evidence handling; search and seizure law; law involving conspiracy; and surveillance and investigation techniques.

3. Prior to your affiant's employment with the DEA, your affiant was employed by the North Little Rock, Arkansas, Police Department since 2007. During your affiant's employment with the North Little Rock Police Department, your affiant was assigned to the DEA Little Rock District Office as a Task Force Officer (TFO) from June 2014 until June 2019. Prior to your affiant's assignment as a DEA TFO, your affiant was assigned to the North Little

Rock Police Department's Narcotics Unit from December 2009 until June 2014. Your affiant has been involved in numerous aspects of drug investigations, including, but not limited to, conducting controlled purchases of narcotics; utilizing confidential sources; debriefing defendants, witnesses, and informants; conducting surveillance and undercover operations; preparing and executing search warrants; analyzing documentary and physical evidence, analyzing phone toll records; and conducting wiretap investigations.

4. In the course of your affiant's career, your affiant has been the affiant of, and/or participated in, numerous search warrants involving the law enforcement seizure of controlled substances, documents associated with the sale of controlled substances and proceeds from the sale of illicit drugs.

5. Your affiant has personally conducted and/or assisted in over 200 investigations of criminal violations involving violations of the Federal Controlled Substances Act (Title 21, U.S.C. 841(a)(1) et. al.).

6. This affidavit is based upon my review of the physical evidence, discussions with participating agencies, and interviews with individuals who have personal knowledge of the events described herein. Because this affidavit is for the limited purpose of establishing the forfeitability of the Defendant Property, it contains only a summary of the facts uncovered in this investigation. I have not included each and every fact known to me concerning the entities, individuals, and the events described in this affidavit.

7. On March 8th, 2024, at approximately 4:27 p.m., while conducting highway patrol on Interstate 40 westbound, Arkansas State Police (ASP) Corporal (Cpl.) Chris Short observed a black 2023 Cadillac Escalade cross the centerline into the left lane, almost causing a motor vehicle accident. A nearby vehicle had to utilize its brakes.

8. The driver of the Escalade failed to use a turn signal and immediately swerved back into the right lane. Cpl. Short initiated a traffic stop on the Escalade near mile marker #2 of westbound Interstate 40. The Escalade is fully described as a black 2023 Cadillac Escalade bearing California license plate/registration #9DDS594, registered to Enterprise Rent – A – Car Company, of Los Angeles, CA and is hereafter referred to as the "rental vehicle." Cpl. Short made contact with the driver and sole occupant of the rental vehicle and asked for him to produce his license and registration. During this encounter, Cpl. Short noticed the driver to be visibly nervous. Specifically, Cpl. Short observed the driver's hands were trembling when he handed over the requested documents. Additionally, Cpl. Short could smell the odor of marijuana coming from inside of the rental vehicle. Cpl. Short identified the driver as Shawkat N. HAMDI of Vista, California.

9. When Cpl. Short informed HAMDI of his reason for the traffic stop, HAMDI admitted he was trying to access his map.

10. HAMDI informed Cpl. Short that he delivered dogs. This statement was provided to Cpl. Short without inquiry. HAMDI agreed to accompany Cpl. Short back to Cpl. Short's patrol vehicle while Cpl. Short checked his driver's license status and began the process of issuing a written warning. Cpl. Short noticed HAMDI continued to be nervous during the entire traffic stop despite Cpl. Short explaining to HAMDI that HAMDI was not in trouble.

11. While speaking with HAMDI inside of the patrol vehicle, Cpl. Short noticed HAMDI's carotid artery pumping in his neck. Also, that HAMDI was holding his breath and that his abdomen was trembling. HAMDI explained to Cpl. Short that he delivered dogs for a living. Most recently HAMDI stated that he had just delivered dog(s) from California to Virginia and that he was stopping in Utah to drop off the remaining two (2) dogs currently in the rental vehicle with

him. HAMDI identified his employer as "Aniops." Cpl. Short noticed that HAMDI was wearing a shirt, a hat, and had a name badge, all displaying the company name, "Aniops." Cpl. Short confirmed the vehicle HAMDI was driving was an Enterprise rental vehicle.

12. Cpl. Short also discovered that HAMDI had a criminal history which included several drug-related arrests.

13. Cpl. Short informed HAMDI that he could smell the odor of marijuana coming from inside of the rental vehicle. Furthermore, that he had no intention of giving HAMDI a hard time about a "little personal" use marijuana. Cpl. Short noticed that HAMDI remained nervous even after Cpl. Short's statement regarding the marijuana. In response, HAMDI admitted to being nervous, but could not state why.

14. Based upon his observations, in light of his training and experience, Cpl. Short then informed HAMDI he was going to search the rental vehicle. At that time, HAMDI asked Cpl. Short if he could retrieve the marijuana from the rental vehicle for Cpl. Short. Based on Cpl. Short's training and experiences, he knew a request of that nature, at this point, indicated a strong potential that additional contraband existed inside the rental vehicle. Offering to retrieve contraband would have allowed HAMDI an opportunity to either conceal or destroy other items of concern or evidentiary value, i.e., drugs, money, or guns.

15. Cpl. Short then conducted a probable cause search of HAMDI's rental vehicle. During this search, Cpl. Short discovered a small amount of marijuana wrapped in a brown piece of plastic and a white package labeled Gelato (marijuana – which was later determined to have a total weight of approximately eight (8) grams), found in the center console of the rental vehicle.

16. Cpl. Short also located a large amount of U.S. currency inside of a taped cardboard box, found in the second row of the rental vehicle, underneath a blanket. An additional large

amount of U.S. currency was located by Cpl. Short inside of a black trash bag further concealed within a black Pelican – style box. The Pelican – style box was also located in the second row underneath the blanket.

17. The U.S. currency discovered by Cpl. Short within the rental vehicle consisted of numerous bundles, wrapped with rubber bands. I know from my law enforcement training and experience that bulk quantities of drugs are often exchanged for bulk-banded amounts of currency. Bulk currency banded in thousand or multi-thousand-dollar increments facilitates a quick count in a public area when drugs and money are exchanged. Although the amount of bulk-banded currency is not standardized, your Affiant knows that this money packaging process is consistent among drug trafficking organizations because it allows the money courier and/or the drug courier to quickly confirm the amount of money received without the laborious and time intensive efforts required to count a large amount of currency in a public setting where these exchanges can take place.

18. Prior to concluding this portion of the search, Cpl. Short located a small undetermined amount of U.S. currency in the center console of the rental vehicle, as well as several miscellaneous receipts in/around the interior.

19. Det. Brian Stanley, a member of the 12th/21st Judicial Drug Task Force (JDTF), located two phones in the vehicle, one which had two pieces of gray "duct" tape on the phone's camera lens and a second phone, found on HAMDI's person.

20. Based upon Cpl. Short's findings, HAMDI was placed under arrest for Arkansas state criminal charges and later transported to the 12th/21st JDTF office.

21. While at the 12th/21st JDTF office, HAMDI informed Det. Stanley that he (HAMDI) told the trooper that stopped him, "You're about to be a legend."

22. While Det. Stanley was standing near HAMDI, a Trooper carried in the cardboard box (containing the U.S. currency) and placed the cardboard box on a nearby table. Det. Stanley then heard HAMDI state, "I bet it takes two of them to carry the other box, that fucker is heavy." Det. Stanley watched as troopers entered the 12th/21st JDTF office carrying the Pelican-style case, and asked HAMDI how much money was in the box. HAMDI replied, "I don't know, I've never actually looked at it. I was told not to, but it's a lot." Det. Stanley stated that HAMDI later asked law enforcement if he could look at the U.S. currency before he went to jail. HAMDI was later transported to the Crawford County Detention Center (CCDC).

23. On March 8th, 2024, Det. Elliot informed me, as a representative of the DEA, of the facts surrounding the motor vehicle stop and subsequent discovery of the large amount of U.S. currency. I immediately began conducting inquires of HAMDI, via investigative databases available to me. After conducting several investigative checks of HAMDI, coupled with information learned from the motor vehicle stop, I confirmed HAMDI's criminal history consisting of several drug and firearm related offenses.

24. On March 11th, 2024, Cpl. Short and Det. Elliott retrieved the U.S. currency from the ASP's evidence room where it had been stored since March 8th, 2024, but was then stored in an unrelated suitcase and sealed with evidence tape. The U.S. currency and packaging were transported to the JDTF Office in Van Buren, Arkansas.

25. On March 11th, 2024, Greenwood, Arkansas, Police Department (GPD) K-9 Officer, Trent Cowan presented his K-9 partner to the now empty cardboard and Pelican-style boxes seized from Hamdi for an open-air sniff. According to K-9 Officer Cowan, during this presentation, his K-9 partner provided a positive alert to the odor of an illegal drug(s) coming from

the cardboard and Pelican-style boxes. K-9 Officer Cowan's K-9 partner is certified through the Arkansas Commission on Law Enforcement Standards and Training Police Canine Qualification.

26. On March 11th, 2024, I and another member of the DEA arrived at the JDTF Office and met with Cpl. Short, Det. Stanley, and Det. Elliott. The DEA seized the Defendant Property as drug proceeds pending further investigation and processed it as evidence. The Defendant Property was later counted during an official count at the Arvest Bank in Fort Smith, Arkansas, resulting in a total amount of $813,490.00.

*Recorded jail calls*

27. After HAMDI's arrest by the ASP for Arkansas state criminal charges, the DEA obtained recorded jail calls that were made by HAMDI while he was an inmate at the CCDC.

28. During a review of a phone call HAMDI made on March 9, 2024, at 11:14 a.m., to telephone number 760-908-2223, officers heard a female voice speaking to HAMDI, informing him, "they" want to know where the money came from. HAMDI replied by stating, "I don't know how to explain it. Someone's listening now." I know from my training and experience that those involved in drug trafficking often cannot legitimately explain the source of drug proceeds. HAMDI's statement during this call is one further indication the U.S. currency seized from HAMDI was drug proceeds from the sale of illegal drugs.

*Search Warrant – Target Telephones #1 and #2*

29. On April 15, 2024, the Honorable Mark E. Ford, United States Magistrate Judge, Western District of Arkansas (WDAR), signed a search and seizure warrant in Case No.: 2:24-CM-00020, which authorized law enforcement to search the phones seized from HAMDI during the traffic stop for evidence of drug trafficking in violation of Title 21 United States Code Sections 841 and 846.

30. Each of the telephones searched had numerous accounts and applications registered to HAMDI's name or his known aliases.

31. During a search of these phones, federal agents located numerous items of digital evidence consistent with HAMDI being involved in a conspiracy to distribute controlled substances. The following is a brief synopsis of the items of digital evidence seized from the telephones:

Evidence contained in Short Message Service (SMS) text messages

32. Our review of HAMDI's telephones revealed numerous SMS text message conversations between HAMDI and what appear to be drug customers during which time those customers placed "orders" with HAMDI for drugs to purchase from HAMDI. These text messages contained slang terms for narcotics that are familiar to me through my training and experience. These text messages also showed HAMDI agreeing to supply these customers with drugs shipments via United Parcel Service (UPS). These texts described amounts, prices, shipping locations, and provided tracking numbers back to the customer. SMS text messages were also reviewed between HAMDI and a phone contact responsible for shipping drugs to HAMDI's customers upon HAMDI's request. The phone contact would ship drugs to the addresses provided by the customers on HAMDI's behalf.

Evidence contained in Note application

33. A note application was discovered, which contained numerous entries that appeared to serve as a drug ledger. These drug ledger notes contained a combination of names and initials, dates, drug quantities and types, payment methods, and several round dollar-amounts ranging from $100.00 to $19,000.00. Some of these drug ledgers described marijuana and some described powdered drugs such as: heroin, fentanyl, and/or cocaine.

Evidence contained in Photos and Videos applications

34. Our review also located numerous close-up photographs of high-grade marijuana which capture visible details of certain types of high-grade marijuana. I know from my training and experience that these types of photographs are consistent with photographs a marijuana source of supply would send a customer to show the quality of the marijuana. A photograph of a kilogram of a white-powdery substance, suspected of being cocaine or fentanyl powder was also discovered. Global Positioning System (GPS) coordinates from the metadata of this photograph showed that it was taken within feet of HAMDI's known residence: 2426 Pruett Drive, Vista, California 92084.

35. Also captured were several videos of large-amounts of U.S. currency bundled in the same manner as the Defendant Property. In some of the videos showing large-amounts of bundled U.S. currency, your Affiant could hear a voice similar to HAMDI's from the person filming the U.S. currency. In two (2) of the videos showing large-amounts of bundled U.S. currency, metadata from the videos also showed the location where these videos were filmed which again corresponded with HAMDI's known residence.

36. Also found was a photograph of a paper drug ledger detailed the amount of $433,140.00. This specific photograph was taken minutes prior to one of the videos which showed a large-amount of bundled U.S. currency. Metadata from the photograph indicates it was also taken at HAMDI's known residence.

37. Finally, metadata from other photographs of large-amounts of bundled U.S. currency on top of a table appeared to be taken at a residence located at 20295 Athenon Avenue, Perris, California 92570.

Evidence taken from phone toll records and call logs

38. Through the service of administrative subpoenas for the cellular telephone numbers assigned to the target telephones belonging to HAMDI, your Affiant discovered HAMDI to be in direct telephone contact with individuals known to the DEA who have been identified as drug traffickers, specifically, a subject (not named in this affidavit) who has been identified as a supplier of fentanyl for a known Drug Trafficking Organization (DTO). HAMDI was also in telephone contact with numerous telephone numbers that have been identified by other law enforcement agencies as telephone numbers in contact with known drug distributors.

## CONCLUSION

39. Based on the facts presented in this affidavit, namely the circumstances of the traffic stop, the manner in which the Defendant Property was found and bundled, statements on the recorded jail phone call, and the quality of evidence found in HAMDI's phones, your Affiant believes the Defendant Property is the proceeds of drug trafficking and otherwise involved in drug trafficking throughout the United States.

Pursuant to Title 28 U.S.C. § 1746, I declare, verify, and state under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this 31st day of July, 2024.

Respectfully submitted,

*M. Brooks*

Michael Brooks
Special Agent
Drug Enforcement Administration